IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

FILED

APR 27 2023

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

Christoper Mark Wilson,

      Petitioner(Pro Se),

v.                                           CR # 5:19CR529-01FL

                                      Honorable Judge Louise W. Flanigan

United States of America,

      Respondent.

MOTION FOR COMPASSIONATE RELEASE OR REDUCTION

OF SENTENCE PURSUANT TO 18 U.S.C. 3582 (C)(1)(A)(i)(D)

NOW COMES, Christopher Wilson, hereinafter known as Petitioner, in pro se forma, respectfully submits the Motion for Reduction of Sentence Pursuant to 18 U.S.C. 3582(C)(1)(A)(i)(d) for Compassionate Release consistent with the First Step Act. In support thereof Petitioner avers as follows:

A Sentence Hearing was held on August 22, 2021. The Honorable Judge Flanigan imposed a sentence of 100 months and a term of 10 years for 18 U.S.C. § 2252 (Receipt of Child Pornography).

It is well settled that pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.' See, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009); see generally Haines v. Kerner, 404 U.S. 519, 520-521 (1972) (per curiam). Pro se complaints should be read with "special solcitiude" and

should be interpreted to raise the "strongest claims that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006)(citations omitted).

Petitioner filed for compassionate release on or about February 22, 2023 with the warden and has received no reply as of April 7, 2023. See Exhibit A (Compassionate Release to Warden Knight).

UNDER SECTION 603 (b) OF THE FIRST STEP ACT

THIS COURT HAS THE POWER

TO GRANT PETITIONER'S SENTENCE REDUCTION

This Court, upon motion of the Director of the BOP, or upon the motion of the defendant who has exhausted administrative remedies to appeal a failure of the Bureau of Prisons to bring a motion on the defendant behalf or lapse of thirty days from the receipt of such a request by the warden of the defendants facility, whichever is earlier, may reduce the term of imprisonment any may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment after considering the factors set forth in 3553 (a) to the extent that they are applicable if it finds that -

1) find extraordinary and compelling reasons for the reduction.

2) consider the relevant sentencing factors under 3553(a)

3) ensure any reduction is consistent with applicable policy statements.

18 U.S.C. 3582 (C)(1)(A) provides that the Court has the power to reduce the defendant term of imprisonment based on the defendants motion after the BOP to bring a motion on the defendants behalf of the lapse of 30 days from the receipt of such a request by the warden of defendants facility;

whichever is earlier 18 U.S.C. 3582 (C)(1)(A)

The 30-day lapse period governs when the Court can act on the motion not when the defendant can file a motion. The statute <u>does not require that the</u> defendant wait 30 days to file a motion with the court. Instead, it allows the court to "reduce the term of imprisonment after the lapse of 30 days from the receipt of such a request by the warden. Petitioner has met this requirement (See Exhibit A) the request to the warden was sent on February 22, 2023 with no reply as of April 7, 2023.

Petitioner's serious deteriorating health conditions, along with the COVID-19 global pandemic, harsh conditions at FCI Fort Dix, 8th amendment violation, lack of adequate medical care to treat his cancer (Waldenstrom Macroglobien Anemia), Thyroid Nodules, Lesion on Right Lung and Angina Pectoris, and he has a BMI > 30; all this warrants a reduction in sentence and creates an extraordinary and compelling reason" to reduce his sentence.

18 U.S.C. 3582 (C)(1)(A)(i) provides that the sentencing court may grant compassionate release based on extraordinary and compelling reasons." The phrase is not defined in the statute but the global pandemic is a quintessential extraordinary circumstance beyond what most individuals would experience in their lifetime, along with Petitioner's serious health conditions which have not been treated to a normal standard of care.

The Court has the authority to find "extraordinary and compelling reasons" other than those expressly identified in commentary to U.S.C.G.

This Court is not restricted to the definition of extraordinary and compelling reasons set out in the Sentencing Guidelines or by the Bureau of Prisons. Before the enactment of the First Step Act of 2018, Congress

delegated to the Sentencing Commission and authority to describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria applied and a list of specific examples. See 28 U.S.C. 1994(1).

REDUCTION IN TERM OF IMPRISONMENT UNDER

18 U.S.C. 3582(c)(1)(A) (Policy Statement) (2023)

Petitioner meets all the criteria listed below:

(a)    In General - Upon motion of the Director of the Bureau of Prisons or the Petitioner under 18 U.S.C. 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. 3553(a), to the extent that they are applicable, the court determines that

(b) EXTRAORDINARY AND COMPELLING REASONS. Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

(1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT

(A) The Petitioner is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia. (Petitioner meets this criteria)

(B) The Petitioner is

(i) suffering from a serious physical or medical condition, (Petitioner meets this criteria)

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the Petitioner to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. (Petitioner meets this criteria)

(C) The Petitioner is suffering from a medical condition that requires long-term specialized medical care that is not being provided and without which the Petitioner is at risk of serious deterioration in health or death. (Petitioner meets this criteria)

(D) The Petitioner presents the following circumstances

(i) the Petitioner is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority; (Petitioner's institution of FCI Fort Dix meets this criteria)

(ii) due to personal health risk factors and custodial status, the Petitioner is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and (Petitioner meets this criteria)

(iii) such risk cannot be adequately mitigated in a timely manner. (Petitioner meets this criteria)

(2) AGE OF THE PETITIONER. The Petitioner (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 or 75 percent of his or her

term of imprisonment, whichever is less. (Petitioner meets this criteria)

Judges have the authority under the catchall phrase provision in application (Note D) to find extraordinary and compelling reasons other than those listed. See United States v. Perez No. 88-10094-JTM, 2020 WL 1180719 (D. Kansas, March 11, 2020) majority of federal courts have found that the most natural reading of the amended 3882 and 994(A) is that the district courts assume the same distinction as the BOP director when they consider a compassionate release motion: See; United States v. Young, NOC 2;00-cr-00002-1 2020 WL 1047815 (M.D Tenn March, 2020)". In short, federal judges no longer constrained by the BOP Director's determination on what defines extraordinary and compelling reasons for a sentence reduction: See United States v. Fox No 2;14-cr-03-BBH (D.Me July 11, 2019) numerous courts have determined that the COVID-19 susceptibility of the virus along with serious medical conditions are extraordinary and compelling. Accordingly, this Court has the authorityy to grant compassionate release to the Petitioner's because of the COVID-19 pandemic along with his serious debilitating medical conditions, which are extraordinary and compelling circumstances for a sentence reduction, regardless of whatever they fall within one of the circumstances set out in application note 1 (A through D).

## 1B1.13 PROVIDES THIS COURT TO GRANT COMPASSIONATE RELEASE

The Second, Third and Fourth Circuits, have recently affirmed the discretion of the district courts to consider multiple factors when analyzing a motion for compassionate release, his own medical conditions as well as the impact of COVID-19 on the prison system. See United States v. Brouder 5765 F.3d 228, 235 (2nd Circuit). District Courts have held that the impact of the

pandemic on the prison system along with serious risk factors are extraordinary and compelling reasons warranting release.

## PETITIONER'S SERIOUS MEDICAL CONDITIONS

## WARRANT GRANTING COMPASSIONATE RELEASE / SENTENCE REDUCTION

Petitioner is 68 years of age, (BMI > 30 ( 38.6 ),( Waldenstrom's Macroglobien Anemia (Cancer)), (Thyroid Nodules), (Lesion on Right Lung), and (Angina Pectoris). Petitioner is being denied multiple medications, adequate medical care to treat his serious medical conditions. (See Exhibit 2 Petitioner's sworn affidavit of the medical neglect and malpractice below a normal standard of care he would receive if not incarcerated).

## MR. WILSON'S MEDICAL CONDITIONS WARRANT GRANTING

## A REDUCTION IN SENTENCE / COMPASSIONATE RELEASE

1) Waldenstrom's Macroglobien Anemia

This is a B-Cell Nonhodgkins Lymphoma that originates in the bone marrow. It is a genetic condition caused by a defective gene at locus 202 of the 6th chromosome pair. it causes an extreme excess of Imunoglobion M (Igm) which causes the red blood cells to stick together. The red blood cells then do not oxygenate correctly. Waldenstrom's causes the blood to become hyperviscous and form clots which then cause strokes and heart attacks and death. Per Dr. Ahmedi, the blood tests taken in December 2022 showed that Petitioner's (Igm) was over 600mg/DL. This is 3 times the maximum normal level for (Igm) in a healthy person. The subtype of Waldenstrom's that Petitioner has is called "Smoldering Waldenstrom's". It manifests itself by lying dormant for a period of time and then the (Igm) level will start increasing on an

exponential curve. Once it starts to reoccur, the Igm level increases exponentially until the blood is unable to support proper oxygenation and forms clots. There has been no effective testing or treatment for this condition since the Petitioner's arrest on May 17, 2019. Petitioner can not be treated properly in FCI Fort Dix or the Bureau of Prisons.

2) Thyroid Nodules

Petitioner was found to have nodules on his thyroid 7/5/2022 when a CT-Scan was performed on him at (Deborah Heart and Lung Emergency Room) after Petitioner passed out and fell at FCI Fort Dix on the way to the dining hall. An ultrasound was performed at Deborah Hospital and it was recommended that Petitioner see both an Endocrinologist and Cardiologist. Petitioner has been taken to the ER 4 more times and been hospitalized once since the initial ER visit on 7/5/2022. Petitioner has been informed multiple times since then by Dr. Ahmedi that "Petitioner has an appointment scheduled for an Endocrinologist", but he has yet to see one. Petitioner having increases trouble swallowing, and he must chew up medications as they get hung in his throat and causes gagging. His voice has become "gravely" and he cannot talk long without getting a sore throat.

3) Lesion on Petitioner's Right Lung

On his 3rd trip to Deborah Heart and Lung ER on 1/16/2023, a CT-Scan was performed on his chest that revealed a 3cm by 5cm lesion on his right lung. Petitioner was at Deborah Heart and Lung ER because of sinus Anterior Fibulation of his heart. The lesion was discovered by accident while looking for a possible pulmonary embolism. Previous to the CT-Scan, FCI Fort Dix medical has performed 3 X-rays on his chest and found nothing. This is

problematic as Petitioner had worked in the Airline industry for 15 years and was exposed to Fiberous Asbestos during that time on multiple occasions.

4) Angina Pectoris

This is a narrowing of the coronary arteries caused by the build up of plaque on the artery walls that narrows the passage and restricts blood flow. This causes the inability to walk and breath efficiently. If a piece of the plaque breaks off, it forms a blockage (heart attack). Fort Dix continues to not treat these conditions.

5) BMI > 30

According to the CDC and the Department of Justice BMI > 30 is an extraordinary and compelling reason alone for granting Compassionate Release along with all Petitioner's other serious medical conditions.

## PETITIONER'S MEDICAL CONDITIONS ARE NOW
## RECOGNIZED AS SERIOUS RISK FACTORS BY THE CDC AS OF
## JUNE 25, 2020 AND AUGUST 30, 2020

On June 25, 2020 and again August 30, 2020, the Centers for Disease Control and Prevention ("CDC") revised the list of medical conditions which increase the risk of severe illness from COVID-19 infection. The CDC has identified BMI greater than 30, in connection with Waldenstrom's Macroglobien Anemia, Thyroid Nodules, Lesion on Right Lung and Agina Pectoris are extraordinary and compelling circumstances for Compassionate Release.

According to the CDC, there is the "strongest and most consistent evidence" that people with these conditions "are at increased risk of severe illness from COVID-19." (Coronavirus Disease 2019(COVID-19) - People with Certain Medical Conditions, CDC (updated August 30, 2022); available at

Scientific Evidence for Conditions that Increase Risk of Severe Illness, CDC (updated July 28, 2022);

### THE DEPARTMENT OF JUSTICE AGREES THAT THE
### NEW CDC GUIDELINES ARE EXTRAORDINARY AND
### COMPELLING REASONS UNDER 1B1.13. APPLICATION NOTE 1(A)(ii)(1)

The Department of Justice has taken the position that having a CDC-identified risk factor for COVID-19 is an "Extraordinary and compelling reasons" within the meaning of the Application Note 1(A)(ii)(I), in light of the COVID-19 pandemic. See, e.g. Williams et al. v. Wilson et al., Sup. Ct. No. 19A1047, United States reply in support of Application for Stay (June 4, 2020), p.18 n.4 "The Department of Justice has taken the position in litigation that, under present circumstances, an inmates diagnosed with a medical condition that the CDC has identified as a serious risk factor for COVID-19, and from which the serious risk factors the inmate is not expected to recover, presents an 'extraordinary and compelling reason' that may warrant compassionate release if other criteria are also met".

Indeed, the DOJ recently took the position that obesity alone is an extraordinary and compelling reason for a sentence reduction. See United States v. Cole, No. 1:18-cr-00167-ELH, Doc. 95 (D.MD July 30, 2020). Petitioner has five (5) comorbidities, which are considered serious risk factors by the CDC.

The government has taken this position in other cases in other districts. See e.g. Response to Defendant's Motion for Compassionate Release and Supplement. United States. V. Breaw, No. 1:18-cr-10025-CBK, Doc, 76, p.14 (D.S.D. July 23, 2020) "The Department of Justice has determined that, during

the COVID-19 pandemic, conditions like Waldenstrom's, obesity, and Petitioner's other serious medical issues which increases risk of illness due to COVID-19, presents "a serious physical or medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment or correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13, cmt. n.1 (A)(ii)(D), "in that inmates ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished within the environment of a correctional facility, by the chronic condition itself."

## GLOBAL PANDEMIC OF COVID-19 IN RELATION TO PEOPLE WITH COMORBITIES

COVID-19 is an unprecedented global health emergency that presents a serious risk to petitioner and his family. As of September 15, 2022, COVID-19 has infected millions of people globally leading to more than 9 million deaths. In the United States there have been almost 1.4 million deaths, with hundreds of thousands more people admitted to hospitals each week.

People with conditions such as Waldenstrom's Macroglobien Anemia, Thyroid Nodules, Lesion on Right Lung Angina Pectoris and BMI > 30 (6' 285 lbs), who have multiple comorbidity factors are hundreds of times more likely to die than those with no cormbidity factors to die from COVID-19. Scientists suggest another likely driver is that the COVID-19 vaccines are ineffective with people who are obese. 50% of the people that died in the United States in 2021 were fully vaccinated and had comorbities. See (CDC.gov) citing Dr. Burkes. Prison medical care is below a standard level of care in which Petitioner would receive if he were not incarcerated. Petitioner is suffering long term complications due to the lack of medical care at FCI Fort Dix.

## MODIFICATION OF SENTENCE

A court may generally "not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); Dillon v. United States, 560 U.S. 817, 819 (2010). The Supreme Court recently disclosed a more amply view of which entails for criminal defendants to request compassionate release or sentence modifications, for "extraordinary and compelling reasons". See; United States v. Concepcion, No. 20-1650 (June 27 2022) (Supreme Court); see also, United States v. Ruvalcaba, 26 F.4th 14 (1st Cir. 2022); and US v. Trenkler, No. 21-1441 (1st Cir. -Aug. 29, 2022).

The Supreme Court decision in Concepcion, supra, the Court held: "The First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence. That discretion also carries forward to later proceedings that may modify an original sentence. District courts' discretion is bounded only when Congress or the Constitution expressly limits the type of information a district court may consider in modifying a sentence." See, Syllabus Opinion.

The Supreme Court stated: "Accordingly, a federal judge in deciding to impose a sentence "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come". United States v. Tucker, 404 U.S. 443, 446. Also held, "The Court therefore holds that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act (603 b) Compassionate Release / Reduction in Sentence motions.

The facts here have changed for this Court, for not only the possible

infection of COVID-19, but the medical neglect for the treatment of Petitioner's Cancer and other serious medical conditions, when deciding a First Step Act motion, district courts bear the standard obligation to explain their decisions and demonstrate that they considered the parties' non-frivolous arguments. See Golan v. Saada, 596 U.S. No: 20-1014(2022).

In Ruvalcaba, supra, the First Circuit panel reiterated district courts' "broad discretion" and "holistic review" when resolving compassionate release motions. Ruvalcaba convincingly set the standard for a district court reviewing a prisoner's proposed reasons for compassionate release, making it clear that district courts have the discretion to review prisoner-initiated motions by taking the holistic, any complex-of-circumstances approach we discussed earlier. Also, they stated: "Section 603(b) of the FSA fundamentally changed the compassionate-release mechanism. The amendment, entitled 'Increasing the Use and Transparency of Compassionate Release,' created a new regime in which -- for the first time - prisoners may seek compassionate release even when the [Bureau of Prisons] does not deign to act on their behalf." Ruvalcaba, 26 F.4th at 22 (citing FSA sec. 603(b),m 132 Stat. at 5239).

Later in Trenkler, a First Circuit panel stressed and reiterated a prior ruling setting out compassionate release rules. They stated: "Ruvalcaba convincingly set the standard for a district court reviewing a prisoner's proposed reasons for compassionate release, making it clear that the district courts have the discretion to review prisoner-initiated motions by taking the holistic, any complex-of-circumstances approach we discussed earlier. Indeed, this approach makes sense. After all, it is possible that the whole may be

greater than the sum of its parts, and reasons that might not do the trick on their own may combine to constitute circumstances that warrant finding that the reasons proposed are, in the aggregate, extraordinary and compelling. This is not to say that district court must find a certain number of extraordinary and compelling reasons. Rather, in conducting their reviews, district courts should be mindful of holistic context of a defendant's individual case when deciding whether the defendant's circumstances satisfy the "extraordinary and compelling" standard -- "any complex of circumstances" contemplates that any number of reasons may suffice on a case-by-case basis, whether it's one, two or ten.

The district court sentenced Petitioner without the information that how long the BOP and FCI Fort Dix would be locked down for the COVID-19 pandemic, his serious medical conditions which have progressively worsened and not been treated properly, in Concepcion and Ruvalcaba, cited herein. Nothing in the text and structure of the First Step Act expressly, or even implicitly, overcomes the established tradition of district courts' sentencing discretion. By its term, § 404(c) does not prohibit district courts from considering any arguments in favor of, or against, sentence modification under Compassionate Release.

Consistent with this text and structure, district courts deciding first Step Act motions regularly have considered evidence of post-sentencing rehabilitation unrelated Guidelines amendments when raised by the parties. First Step Act movants have amassed prison records of over a decade. See § 404(a), 132 Stat. 5222 (requiring the movant to have been sentence for an offense "committed before August 3, 2010"). Those records are naturally of

interest to judges authorized by the First Step Act to reduce prison sentence or even to release movants immediately. Likewise, when deciding whether to grant First Step Act Compassionate Release / Reduction in Sentence motions and in deciding how much to reduce sentences, courts have looked to post-sentencing evidence of violence or prison infractions as probative. Moreover, when raised by the parties, district courts have considered non-retroactive Guidelines amendments to assist whether to reduce sentences at all, and if so, by how much. Nothing express or implicit in the First Step Act suggests that these courts misinterpreted the Act in considering such relevant and probative information.

A district court requires that a sentence reduction be "consistent with applicable policy statement issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). In other words, "applicable policy statements" issued by the Sentencing Commission are binding on courts reviewing compassionate-release motions. See Saccoccia, 10 F.4th at 7 (citing Dillon, 560 U.S. at 826-27). Further, the district court lacked power to determine the Sentencing Commission later will identified some extraordinary and compelling reasons in the commentary to section 1B1.13. See id. § 1B1.13 cmt.n.1 (A)-(D). At the time the FSA was enacted, this compendium included four categories of extraordinary and compelling reasons: medical conditions; age; family circumstances; and a catch-all for other reasons deemed appropriate by the BOP. These new tools remain unchanged today. The new policy statement says that non-retroactive changes in sentencing law may constitute an extraordinary and compelling reason for compassionate release in combination with other factors. In order to put this into perspective, then, evaluate the effect, if

any, of section 1B1.13 on the defendant's effort to obtain Compassionate Release.

## FORT DIX'S SEVENTH COVID-19 OUTBREAK

As of April 1, 2023 FCI Fort Dix has experienced <u>seven</u> <u>uncontrolled</u> outbreaks of COVID-19 within 36 months including in Petitioner's building of 5812, FCI Fort Dix had over 2,400 confirmed cases during this time and multiple deaths prior to this newest outbreak. There have been a number of horror stories reported in the press concerning prison conditions and inmate infections at FCI Fort Dix. For example, the Bureau of Prisons and specifically F.C.I. Fort Dix has failed to provide adequate measures to combat the pandemic or provide timely and appropriate medical care cannot be disputed and stand out as totally inadequate.

But the operational failures at Fort Dix and these personal experiences, as detailed supra and as further evaluated infra, go well beyond the facts shown in compassionate release motions the Court routinely sees.

In <u>United States v. Burr</u>, an inmate in Petitioner's building, 13 Cr. 165 at p.13 (Middle District of N.C. 2022). Granted compassionate release on December 15, 2022 with 8.5 years remaining on his sentence due to inadequate medical care at FCI Fort Dix. The Court denied Burr's first Compassionate Release and after 1 year of not being properly treated for his serious medical conditions, Burr was granted Compassionate Release to receive proper care.

See also e.g., <u>United States v. Roman</u>, No. 2:14-CR-43, 2021 WL 3173351, at *4 (S.D. Ohio July 26, 2021), aff'd, No. 21-3718, 2022 WL 363866 (6th Cir. Jan. 7, 2022) (granting Ft. Dix inmate's motion for compassionate release because "the absence of sufficient medical care while incarcerated [is] an

"'extraordinary and compelling'" reason justifying release"); <u>United States v.</u> <u>Deretz</u>, F.Supp.3d, 2022 WL 2192931 *3-4 (E.D.P.A June 17, 2022) (granting Ft. Dix inmate's motion for compassionate release because "BOP's repeated delays in arranging for care to protect [the defendant's] vision constitute an extraordinary and compelling reason for release"). Importantly, the court expressed its lack of confidence in the BOP noting that at Ft. Dix, "BOP's history of failing to timely schedule appointments gives the Court little confidence that [the defendant] could obtain an urgently needed procedure if, or more likely when, his vision deteriorates further". In another example, a 75-year old food server, who was seriously ill with COVID-19 continued to work for days. A staff member sprayed a prisoner in distress with disinfectant before the inmate's mask was removed. See NJ SPOTLIGHT.

In Petitioner's own Unit, Edward Samuel Jr. complained of COVID-19 symptoms for 10 days and nothing was done on the 11th day Mr. Samuel fell down during stand-up count and was carried down 3 flights of stairs by inmates and still was not taken to the hospital. The next day, Mr. Samuel was finally rushed to the hospital where he spent 34 days in intensive care and now has brain encephalitis, has lost his ability to walk and is now wheelchair bound.

Petitioner and other inmates at FCI Fort Dix are housed on 370 man units with 12 man and some two man rooms, with shared showers, toilets and sinks located in communal areas where social distancing does not occur. The rooms have no locks on their doors and cannot be secured as stated in phase 11 of the BOP's "action plan". Inmates can, and do float freely throughout the Unit without any facial coverings while inside units such as Unit 5812, where Petitioner is housed. And, the staff and inmates are <u>not being tested for</u>

COVID-19 unless they are days within release to the community. Inmates are no longer being temperature screened. Unit 5812 averages approximately 18 officers per day, with more than 3/4 not wearing facial coverings.

Correctional officers conduct searches of inmates' room with no PPE donned, and it has been stated that this is in accordance with staff policy. Correctional officers are interchangeable between units.

There are no realistic statistics of what is actually occurring with the BOP's "Action Plan" in any of its facilities, including Fort Dix.

## MASS TORT LAWSUIT AND LACK OF MEDICAL CARE

FCI Fort Dix is the subject of a current mass-tort lawsuit pending before the Third Circuit, brought by multiple individuals in Petitioner's Housing Unit against the United States and the FCI Fort Dix officials and medical staff. The law firm (Gibbons PC) and lead attorney, Lawrence Lustberg, have filed an amended complaint in Thieme et al. v. FBOP, et. al, Civil Action No. 21-cv-0682. Mr. Lustberg quoted Justice Sotomayor Valentine v. Collier, 140 S. Ct. 1598, 1601 (2020) "It has long been said that a society's worth can be judged by taking stock of its prisons. That is all the truer in this pandemic, where inmates everywhere have been rendered vulnerable and often powerless to protect themselves from harm. May we hope that our country's facilities serve as a models rather than cautionary tales". Lustberg then went on to state "Unfortunately, for those incarcerated at the Federal Correctional Institution at Fort Dix (FCI Fort Dix) in the fall of 2020 - including Plantiffs-Justice Sotomayor's clarion warning went unheeded: Plaintiffs were left powerless to protect themselves from the ravages of COVID-19". Meanwhile Defendants United States of America, Michael Carvajal, Nicole English, David

Ortiz, Lamine N'Diaye, and Kimberly Kodger (Defendants) abdicated their responsibilities to ensure the health and safety of the incarcerated individuals under their care. For that reason, Plaintiffs brought the action and submit a memorandum of law in opposition to Defendant's Motion to Dismiss (ECF No.38) Plaintiffs' Second Amended Complaint (ECF No. 16 (SAC)). This amended complaint was filed on or about September 25, 2022. The amended complaint also stated "Fort Dix officials have continued to disregard COVID-19 protocols and have negligently exposed prisoners to COVID-19, Fort Dix never instituted a policy of testing all prisoners exposed to COVID-19, Fort Dix never instituted a policy of testing all prisoners exposed to COVID-19 or inmates in close contact with people who tested positive to COVID-19 and now even refuses to test vaccinated symptomatic prisoners for COVID-19 despite clear guidance to the contrary. See Centers for Disease Control and Prevention, Interim Guidance for SARS-COV-2 Testing in Correctional and Detention Facilities, (noting that "incarcerated/detained persons with known or suspected exposure to someone with COVID-19 (including close contacts) should be tested for SARS-COV-2 regardless of vaccination status"). For example, several prisoners in the same Unit (5812) at FCI Fort Dix recently contracted COVID-19. Prison staff refused, pursuant to prison policy, to test the vaccinated or unvaccinated prisoners in Petitioner's Unit despite having confirmation that those prisoners were allowed to potentially spread the virus throughout the Unit. As a result, there are still confirmed COVID-19 cases at FCI Fort Dix. See https://www.bop.gov/coronavirus.

The COVID-19 conditions are so shameful at FCI Fort Dix that a Federal Judge admonished the BOP for failing to protect incarcerated persons at the

facility granting three men compassionate release, The Honorable Judge Catherine C. Eagles, United States District Judge for the Middle District of North Carolina, found that the facility did a poor job responding to the difficulties posed by this contagious and potentially deadly virus in a congregate living situation. Despite having months of experience with the virus, prison officials made decisions in the fall of 2020 that allowed the virus to spread throughout the prison, and the number of cases at the prison skyrocketed over the winter-all the while the number of cases at many other BOP facilities declined. United States v. Newell, No. 13-cr-165, 2021 WL 3269650, at *1 (M.D.N.C. July 30, 2021), appeal dismissed sub nom., United States v. Burr, No. 21-7193, 2021 WL 9299047 (4th Cir. Sept. 22, 2021). The court also found that "[t]he reasons for this explosion of [of cases at FCI Fort Dix in late 2020] are clear from the evidence. These cases and Judges admonishment demonstrate how dire the situation is to Petitioner with his myriad of health problems.

## INMATES GRANTED COMPASSIONATE RELEASE FROM PETITIONER'S HOUSING UNIT

See United States v. Pena, Cr. No. 15-cr-551 (AJN)(SDNY) defendant was convicted of a Violent Hobbs Act Robbery, (granted compassionate release due to hypertension alone. Defendant had 27 months remaining on his sentence.); Al-Jumail v. United States, Civil No. 12-11949 (6th Cir. June 2020) (E.D.Mich.) defendant was granted compassionate release to a time-served sentence, and as part of his supervised release, was given home confinement. Al-Jumail had 4 years remaining on his sentence. (May 2020); United States v. Cooper, 13-cr-66 (JPO)(SDNY) convicted of Enticement of a Minor, in violated of 18 U.S.C. 2422(b). Was granted compassionate release with 27 months

remaining on his 10 year mandatory sentence. (June 10, 2020); United States v. Brahman, Cr. No. 2:94-cr-00458 (GFKP)(EDPA) convicted of Hobbs Act Robbery 18 U.S.C. § 1951 with violence and had four years remaining on his sentence; United States v. Blair, Cr. No. CCB14-0360 (D.MD. July 2020) convicted of 18 U.S.C. 2252 (Receipt of Child Pornography) and had 36 months remaining on his sentence; United States v. Hayes, Cr. No. 2:17-cr-20292 (DML)(FAS) (6th Cir.) was convicted of a Hobb's Act Robbery, in violation of 18 U.S.C. 1951, and was convicted of Obstruction of Justice, in violation of 18 U.S.C. 1512(b). He was granted compassionate release with 36 months remaining on his sentence.

Petitioner does not intend to diminish the seriousness of his offense, and will never recidivate and will be under strict monitoring while on Supervised Release, but rather asks this Court to consider the multiple district courts have granted compassionate release to thousands of inmates, many of whom committed crimes much more serious than Petitioner.

<u>CASES IN OTHER CIRCUITS GRANTED COMPASSIONATE RELEASE</u>

Cases of inmates who also were granted compassionate release in multiple districts.

Cases also include multiple recidivists, and inmates who had significantly more time remaining on their sentence than Petitioner does.

See United States v. Curtis, Cr. No. 03-533 (BAH) Served 17 years of Six Life Sentences, 18 U.S.C. 1591 (Sex Trafficking of Minors) (career offender); United States v. Warren, Dist LEXIS 99095 Cr. No. 3:95-cr-00147-01 June 5, 2020 (S.D.W.Va.) (LIFE SENTENCE) Organizer, Leader of a Major Drug Conspiracy, Directed Murder of a Potential Witness; United States v. El-Hanafi, (S.D.N.Y.) LEXIS 87886, 10-cr-162 (UMN) (Terrorist) Providing and

Attempting to Provide Material Support and Resources to a Designated Foreign Terrorist Organization (Al-Qaida) 15 year sentence on 6/18/2012; projected release date of February 9, 2023. (Hypertension, Stage 3 Chronic Kidney Disease); United States v. Delgado, (Dist. Court of Conn.) Dist. LEXIS 84469; Cr. No. 3:18-cr-UAB-1 (Apr. 2020) 21 U.S.C. 841(a)(1) and 841(b)(1)(A). Sentenced to 120 months (Served 29 months of 120 month sentence) Projected Release Date Of June 26, 2026. (Obesity, Sleep Apnea); United States v. Bess, April 22, 2020 Dist. LEXIS 710566; 84 months, 60% of his sentence served. (Congestive heart failure, coronary artery disease, diabetes, hypertension); United States v. Walid Jamil, (N.D.CA.) Dist. LEXIS 90507 Cr. No. 15-cr-00264-LHK-4 (May 21, 2020) 18 U.S.C. 2320(a) (Counterfeit Goods) (Hypertension, Obesity) Sentenced to 84 months, Served 50% of his sentence; United States v. Gonzalez, (SDNY) Dist. LEXIS 93231; Cr. No. 12-cr-326 (JMF); 05-cr-1292 (JMF) (May 28, 2020); Convicted of 21 U.S.C. 841 plus 846 (14 year sentence for several drug crimes while on supervised release) these offenses capped a career of crime spanning from 1997-2011 45 years old (Hypertension, Obesity) (Projected Release of Feb. 2024).

Petitioner moves this Court to consider the cases here that included a sex trafficker of minors who received six life sentences, a terrorist who conspired with Al-Qaida on U.S. soil, a drug king-pin who ordered a murder of a potential witness, an inmate that served only 29 months of a 120 month sentence, and an inmate who only had asthma and hypertension, and who had only served 30% of his sentence. Petitioner has more severe medical conditions, is no threat to his community, and meets the requirements for a sentence reduction. Petitioner's serious medical conditions along with the lack of

medical care of FCI Fort Dix is an extraordinary and compelling reason to grant a sentence of time served and as part of his supervised release, a period of Home Confinement for as long as the Court deems necessary.

## RECENT STATISTICS OF VACCINE INSUFFICIENCY

Since March of 2021, fifty-six percent (56%) of all inmate COVID-19 related deaths were people who had caught the virus once before but suffered lighter symptoms. Inmates within the Federal Prisons are <u>twice as likely to die</u> from COVID-19 than the general population.

An <u>Oxford University Study</u> released recently found that two doses of the Pfizer vaccine are much less effective at warding off COVID Omicron than previous variants of the coronavirus, especially beyond 28 days after the second dose, of either vaccine. When omicron was introduced to those samples, scientists reported "a substantial fall" in the neutralizing antibodies that fight off COVID compared to the immune responses seen against earlier variants. The research paper noted that some vaccine recipients "failed to neutralize the virus at all". The Johnson and Johnson "vaccine" produced virtually no antibody protection against Omicron. "underlining the new strain's ability to get around one pillar of the body's defenses", according to one of the researches. A December 16th, Imperial College of London study found that the risk of reinfection with the Omicron coronavirus variant is more than five times higher, with no sign of being milder than prior COVID variants, but a rare blood-clotting condition was higher than previously detected.

<u>"A recent Israeli and UK Study of 800,000 vaccinated people stated that 56% of recent hospitalization and deaths has occurred in fully vaccinated</u>

individuals. Which is now in agreement with the CDC study that 50% of deaths in patients in 2021 and 2022 have been fully vaccinated.

## MOST INFECTED PRISON IN THE BOP

From March 2020 through September 15, 2022, FCI Fort Dix became the most infected federal prison in the country, and experienced multiple deaths and multiple "reinfections" in Petitioner's Housing Unit alone.

Petitioner wants to emphasize to this Honorable Court that the situation at FCI Fort Dix is dire. In November of 2021, Senate Judiciary Chairman Dick Durbin called for the Director of the BOP, Michael Carvajal, to be fired after an investigation by the Associated Press revealed, not only rampant criminal activity amongst BOP employees, but also a total mismanagement of the COVID-19 crisis within the federal prison system. See Exhibit E (Letters from Senators and Congressmen). FCI Fort Dix is the largest of the federal prisons, and sustained the largest number of COVID-19 cases during its now sixth uncontrolled outbreak of COVID-19, with more than 2,400 inmates catching the virus and more than 100 staffers and multiple deaths. Michael Carvajal, Director of the Bureau of Prisons, announced that he was resigning, along with this deputy director. This is apparently due to continued pressure from Washington and Congress. Resulting from the gross mismanagement of the COVID-19 pandemic within the federal prison system.

## THE BOP AND FCI FORT DIX ARE FUDGING THE NUMBERS FOR COVID-19

In an effort to obfuscate the severity of the situation, the Bureau of Prisons is fudging the numbers of sick inmates. As any inmate who previously got sick with COVID-19 leaves a facility, their numbers drop off the total reported. At the worst of the outbreak. FCI Fort Dix reported more than 2,400

sick inmates, today, the BOP website reports that Fort Dix had only 1,600 sick inmates. In Senator's Durbin's November address before the Senate Judiciary Committee's meeting Durbin said, "Director Carvajal was handpicked by former Attorney General Bill Barr and has overseen a series of mounting crisis, including failing to protect BOP staff and inmates from the COVID-19 pandemic, it is past time for Attorney General Garland to replace Director Carvajal with a reform-minded director who is not a product of the BOP bureaucracy."

WATER CONTAMINATTION AND TOXIC MOLD

To make a bad situation even worse, Fort Dix, Joint Base MDL, is now named in a mass-tort lawsuit by the New Jersey Department of Environmental Protection against the United States due to toxic chemicals in the ground and drinking water at Joint Base where Fort Dix is located. In the complaint, the NJ Department of Environmental Protection declares that the U.S. has been negligent because they failed to follow safe drinking and ground water standards for residents on the Fort Dix base, including inmates of FCI Fort Dix, for perfluoroctane sulfonic acid and perfluoroctanoic acid thus causing imminent and substantial endangerment to human health. Prolonged exposure to PFOS, PFOA chemicals and toxic mold cause myriad health conditions to humans, even at extremely low levels, and decreases antibody responses to vaccines such as the Moderna and Pfizer COVID-19 vaccines. See: N.J.D.E.P. v. United States, No. 2:18-mn-2873 (2021). Petitioner is extremely susceptible due to his serious medical conditions from these contaminants.

The EPA and the NJDEP have promulgated safe drinking ground water and air standards for PFOS, PFOA, and other chemicals, not to exceed .004 and .04 parts-per-trillion("ppt"). In the most recent tests of the three wells that

provide ground and drinking water for Joint Base MDL the amount of PFOS and PFOA chemicals registered as high as 240,000 ppt. No tests have been done in FCI Fort Dix or in Petitioner's Unit for toxic Black Mold and Asbestos which is viewable to the naked eye.

Prolonged exposure to these chemicals and air contaminants cause a host of life-threatening medical conditions including: kidney disease, kidney cancer, kidney stones, thyroid cancer, testicular cancer, liver cancer, colon cancer, high blood pressure, high liver enzymes, heart disease, respiratory disease, skin rash, colitus, and diverticulitis etc. All of these are serious conditions, and an investigation into inmates' medical records at FCI Fort Dix will show an elevated level of these conditions amongst the inmates. Petitioner and inmates at Fort Dix diagnosed in the last six months have every one of these disorders. In Petitioner's Housing Unit alone, two inmates were just diagnosed with testicular and prostate cancer. Along with a host of inmates with kidney stones, and kidney disease. Petitioner knows of six inmates right now that are showing blood when they defecate. All Petitioner's symptoms have become progressively worse since being incarcerated at FCI Fort Dix.

This contamination is present and it poses an imminent and substantial danger to, not only Petitioner's health, but also to the health of every inmate currently imprisoned at Fort Dix, as commanded by Congress, the Bureau of Prisons owes every inmates in its custody a "duty of care" pursuant to 18 U.S.C. § 4042(a)(2) and (3). In as much, the BOP must provide adequate quarters, protection, care and safekeeping. And they have breached that duty of care by creating such a dangerous situation and the forcing inmates to

bathe, drink, wash their clothes, cook their food, and even shower in water with toxic chemicals. To add insult to injury, when inmates file grievances against the BOP asking for redress and relief, the Bureau of Prisons focuses on defeating every inmate rather than addressing the issue at hand to ameliorate this dangerous situation.

## RELEASE PLAN

Petitioner, upon his release, will reside at 185 Coley Rd. Henderson, NC with his Brother (Bryan J. Wilson, Phone #: (919)454-4763). Petitioner can begin a 10-day quarantine period immediately, so as not to be a danger to the health of any person within his community. If the court prefers, Petitioner is agreeable to a 10-day COVID-19 pre-release quarantine at FCI Fort Dix. As a further safety measure,if the Court chooses, Petitioner could even be quarantined for 14 days before release and an additional 14 days immediately upon arrival at his home.

Petitioner will abide by any and all National, State and Local ordinances in North Carolina which concern the COVID-19 virus to help contain and eliminate the pandemic. While at home he will ensure that masks are available and utilized as well as plenty of soap, hand cleaners, and other types of sanitziers.

Petitioner's financial needs will be accommodated medicare and social security and his health-care needs will be accommodated by Duke Raleigh Oncology / Hemotology Cancer Center (600 Wake Forest Rd. Ralaigh, NC 27605).

After release, Petitioner plans to remain a law-abiding citizen for the remainder of his life, and to never have unlawful interactions with law enforcement will never even think of viewing the illegal and immoral content

which brought to his incarceration again. This time of incarceration has instilled in him a good respect for authority and the law, during this COVID-19 lockdown.

If this Court grants Petitioner's compassionate release, he plans to return to North Carolina and rebuild his life. He only needs one opportunity from this Honorable Court.

CONCLUSION

Petitioner wants to bring to your Honor's attention that he has cited numerous cases in this Compassionate Release, but there is one case that stands out alone in how the BOP is treating medically vulnerable prisoners such as Petitioner. See <u>United States v. Frederick Mervin Bardell</u>, Case No. 6:11-cr-401-RBD-DAB, District of Florida, Orlando Division, October 4, 2022 ("Judges carry the heavy burden of depriving individuals of their liberty. But the Bureau of Prisons shoulders the constitutional burden of protecting the remaining rights of the incarcerated while in custody. The possibility that the Bureau of Prisons would be so indifferent to the human dignity of an inmate in its care as the facts here demonstrate, increases the burden on the sentencing judge exponentially. This, of course, pales in comparison to the suffering of the inmate and his family."). Petitioner moves your Honor to please view the details of this case (See Exhibit 3) (<u>United States v. Bardell</u>). Petitioner wants to emphasize that this is how the BOP treats its medically vulnerable inmates.

Petitioner meets the requirements for Sentence Reduction/Compassionate

Release which should be sufficient to meet the goals of sentencing. Petitioner has been unable to do any rehabilitative programming due to COVID-19. Numerous inmates have been severely ill, including Petitioner, and no one is being tested for COVID-19.

Multiple inmates at FCI Fort Dix have died from COVID-19, including Myron Crosby who was complaining of breathing issues on multiple days while in quarantine until he was finally taken to the hospital where he died.

Petitioner symptomatic situation is the quintessential "extraordinary and compelling" circumstances which warrants an immediate release from the custody of the Bureau of Prisons. Please consider the totality of the situation here and grant this compassionate release.

This Court has the ability to look at not how the COVID-19 virus would cause Petitioner greater harm but also the lack of medical care by the BOP at FCI Fort Dix medical staff are unable to treat his serious medical conditions. These extraordinary and compelling circumstances, along with the inability to properly maintain self care, social distancing along with the contraction of COVID-19. Petitioner hopes and prays that this Court understands that he is not a danger to the community. Petitioner believes that, under 3553 (a) factors that this Court never intended for a term of incarceration to be a death sentence or resulted in permanent physical injury or death. Petitioner has not been treated properly or to a standard of medical care for his multiple serious medical conditions listed in this Compassionate Release motion.

Today, looking at all the factors in the above motion, the legal landscape has changed in favor of Petitioner. Petitioner's medical conditions

and the ability to receive proper medical care are in favor of granting him Compassionate Release, and deserves a second chance. If the Court grants the Petitioner's Compassionate Release / Reduction in Sentence, he plans to return to North Carolina and rebuild his life. He also plans, after completing his medical treatment, to obtain gainful employment as a Communications/Network Engineer of which he has over 40 years of experience. This will allow him to be a productive and tax paying member of society again as he was for almost 50 years prior to his arrest. He only needs one opportunity from this Honorable Court.

The district should assess anew the mitigating factors for granting this compassionate release. Lastly, it is now clear district courts have the discretion to review prisoner-initiated motions by taking the holistic, any complex-of-circumstances approach we discussed earlier.

WHEREFORE, for the foregoing reasons and recent case law cited herein, Petitioner prays this Honorable Court grants this motion for Compassionate Release and immediately releases him from incarceration. Also, vacates the sentence and conviction imposed in the instant case based on the provision's reforms mentioned above. Your Honor may impose a period of Home Confinement as part of his supervised release for as long as this Court deems necessary which has been done in most of the Compassionate Releases in FCI Fort Dix.

Petitioner begs this Court to grant this Compassionate Release so that he may receive proper medical care at Duke University Hospital for his cancer and myriad of other serious health conditions.

Petitioner Christopher Mark Wilson respectfully asks this Court to

view this motion liberally pursuant to <u>Haines v. Kerner</u> 505 U.S. 519 (1972) due to the fact that Petitioner is not an attorney and is acting Pro Se.

I, Christopher Mark Wilson, swear state and declare under penalty of perjury under the laws of the United States of America, hereby affirm that all statements herein are true and correct to the best of my knowledge. Pursuant to 28 U.S.C. § 1746. Filed on the day of April 18, 2023.

April 21 2023

Respectfully Submitted,

Christopher Mark Wilson

Reg. No: 67267-056

FCI Fort Dix

P.O. Box 2000

Joint Base MDL, NJ 08640

<u>CERTIFICATE OF SERVICE</u>

Mr. Wilson has filed this motion via the Prison Mail Box Rule under <u>Houston v. Lack</u>, 478 U.S.C. 266 (1988) on *April 21,2023*

Please forward a copy to the United States Attorney for the District of North Carolina Eastern Division due to the COVID-19 lockdown at FCI Fort Dix in which the law library was closed to make copies.

Christopher Mark Wilson

Reg. #: 67267-056

FCI Fort Dix

P.O. Box 2000

Joint Base MDL, NJ 08640